Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **JESSICA MURCH,** individually and on behalf of all others similarly situated, *Plaintiff*, v. **KEYSTONE REMODELING, INC.** **and** **ISRAEL BASAN CONSULTING, INC. D/B/A NEARME ROOFING** *Defendants.* | Case No. 3:25-cv-64 FIRST AMENDED CLASS ACTION COMPLAINT TCPA (47 U.S.C. § 227) DEMAND FOR JURY TRIAL |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jessica Murch ("Plaintiff" or "Ms. Murch") brings this Class Action Complaint and Demand for Jury Trial against Defendants Keystone Remodeling, Inc. and Israel Basan Consulting, Inc. d/b/a NearMe Roofing and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans

'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Keystone, through the vendor it hired to make the calls themselves, NearMe violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4. Plaintiff Jessica Murch is an individual residing in Clackamas County.

5. Defendant Keystone Remodeling, Inc. is a Washington corporation with its headquarters and principal place of business in Seattle.

6. Defendant Israel Basan Consulting, Inc. d/b/a NearMe Roofing is a lead generator with its headquarters and principal place of business in Bellvue, Washington.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has specific personal jurisdiction over Defendants because they directed their illegal conduct to Oregon residents, including Oregon residents with 503- area codes, like Plaintiff.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the conduct alleged herein–the receipt of illegal telemarketing calls–was received in this District.

## BACKGROUND

A.  **The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

FACTUAL ALLEGATIONS

14.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15.     At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the automated calls at issue.

16.     Plaintiff's telephone number, (503) XXX-XXXX, is a residential, non-commercial telephone number.

17.     Ms. Murch uses the number for personal, residential, and household reasons.

18.     Ms. Murch does not use the number for business reasons or business use.

19.     The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20.     Plaintiff's telephone number has been listed on the National Do Not Call Registry more than 31 days prior to the calls at issue.

21.     Plaintiff has never been a customer of Keystone or NearMe and never consented to receive calls or text messages from Keystone or NearMe.

22.     Despite that fact, on August 28, 2024, at 12:33 PM, the Plaintiff received a call from the telephone number 206-338-6495, and it was "Aaron" with "KS Roofing and Remodeling." "Aaron" was calling to offer the Plaintiff an estimate on a roofing or remodeling project.

23. Upon information and belief, "Aaron" is an employee of NearMe, who was hired by Keystone to sell leads to Keystone.

24. Indeed, a subpoena to the telephone provider for 206-338-6495 revealed that it is serviced by AM Communications Labs, which sells the ReadyMode autodialer, which is used to place millions of telemarkting calls to customers *en masse*.

25. A subpoena to AM Communications Labs for the number confirmed that this number was owned, operated, and paid for by Defendant NearMe for the benefit of the Keystone calling campaign that Keystone hired them to conduct.

26. The Plaintiff responded that she was busy and that she would call back if she was interested.

27. Despite not indicating any interest or further interest, the Plaintiff received another call that same day at 2:22 PM from the caller ID 206-338-8015. Again, it was "Aaron," who had the same voice, and who confirmed that he spoke with the Plaintiff earlier and wanted to know if it was a good time to discuss getting a quote for a remodeling project. During this call, "Aaron" confirmed that he was actually with "Keystone Remolding."

28. A subpoena to the telephone provider for 206-338-8015 revealed the same information as for the 206-338-6495 number.

29. Again, the Plaintiff stated that she would call back if she was interested.

30. Upon investigation of counsel, "KS Remodeling" is a mere alias used by Defendant NearMe on the illegal calls they make for Keystone at the outset to avoid ill will for the Defendants' brands.

31. Despite not indicating any further interest, the Plaintiff received yet another call on August 30, 2024 at 9:16 AM from the same caller ID 206-338-8015. Again, it was "Aaron," who was making a follow-up call to see if the Plaintiff was interested in getting a remodeling estimate.

32. The Plaintiff responded that she was busy and that she would call back if she was interested.

33. Despite not indicating any further interest, the Plaintiff received a final call on September 6, 2024 at 11:45 AM from the caller ID 206-338-8015.

34. The purpose of the calls was therefore sent by Defendant NearMe to solicit the Plaintiff to sign up for the Defendant Keystone's products and services, including roofing and remodeling services.

35. Keystone relies on telemarketing to generate new customers through vendors it uses, like NearMe.

36. Keystone hired NearMe to contact potential new leads and customers *en masse* and only sell them the purportedly interested ones.

37. The Plaintiff did not consent to telemarketing calls from the Defendants.

38. The Plaintiff never did business with the Defendants.

39. The calls were not necessitated by an emergency.

40. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

41. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

42. The FCC has instructed that sellers such as Keystone may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such NearMe:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

43. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

44. Keystone is liable for Defendant NearMe's conduct and telemarketing calls placed by NearMe and transferred to Keystone and its agents to generate customers for Keystone and its agents, including the Plaintiff.

45. Keystone was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

46. To do so, Keystone hired NearMe to orchestrate an *en masse* telemarketing campaign for NearMe to contact customers by telephone.

47. A reasonable seller like Keystone whose agents are making calls would investigate into the reasons why their agents and telemarketers would be calling telephone numbers on the do not call registry without consent, let alone why NearMe would continue to call people after they asked the calls to stop.

48. It did not.

49. Keystone hired NearMe without a proper investigation and did not terminate them when they were informed of NearMe's illegal calling conduct.

50. As such, they knowingly ratified NearMe's conduct.

51. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon

the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

52.  The calls therefore constituted unlawful telemarketing.

53.  The calls were unwanted.

54.  The calls were nonconsensual encounters.

55.  Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

56.  Plaintiff never provided her consent or requested the calls.

57.  Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, battery life, wear and tear, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

58.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

59.  Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23 and Oregon Local Rule 23-2.

> **NearMe National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from NearMe or a third party acting on NearMe's behalf, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Keystone National Do Not Call Registry SubClass:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from NearMe or a third party acting on NearMe's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint; (5) that advertised, or were intended to advertise, Keystone's goods and services.

60. Excluded from the class are Defendants, Defendants' officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

61. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of its agents.

62. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

63. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendants have no defenses unique to Plaintiff.

64. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

   a. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

  b. the corresponding degrees of liability as between Defendants, in and among themselves;

  c. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls and;

  d. whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

  65. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

  66. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

  a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

  b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

  c. Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

  d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

67. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

69. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

70. These violations were willful or knowing.

71. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

72. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the National DNC Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the National DNC Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for the Class, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

RESPECTFULLY SUBMITTED AND DATED this 17th day of June, 2025.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

                                          s/Anthony Paronich
                                          Anthony Paronich, Mass. BBO No. 678437
                                          (*Pro Hac Vice* Forthcoming)
                                          anthony@paronichlaw.com
                                          Paronich Law, P.C.
                                          350 Lincoln Street, Suite 2400
                                          Hingham, MA 02043
                                          617-485-0018
                                          Attorney for Plaintiff and the Proposed Class